UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JAMES SWAIN,<br><br>      Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Commissioner, Social Security<br>Administration,<br><br>      Defendant. | Case No: C 13-00440 SBA<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

Plaintiff James Ray Swain ("Plaintiff") filed the instant action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant"). Plaintiff alleges that he was improperly denied disability benefits by Administrative Law Judge Timothy G. Stueve ("the ALJ") in connection with his applications for Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI") benefits. In particular, Plaintiff challenges the ALJ's determination that he does not suffer from a mental impairment that renders him "disabled."

The parties are presently before the Court on Plaintiff's Motion for Summary Judgment (Dkt. 18) and Defendant's Cross-Motion for Summary Judgment (Dkt. 19). Having read and considered the papers submitted, and having reviewed the record, the Court hereby GRANTS Plaintiff's motion and DENIES Defendant's motion. The action is remanded to the Commissioner for the immediate payment of benefits. The Court adjudicates the instant motion without oral argument. Civ. L.R. 7-1(b).

# I. BACKGROUND

## A. PROCEDURAL HISTORY

On June 29, 2009, Plaintiff filed concurrent applications for DIB and SSI benefits, alleging he became "disabled" on November 1, 2007. Administrative Record ("AR") 88-89, 160-61, 162-68, 198. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff requested a hearing, which took place on July 7, 2011, before the ALJ. AR 52. The ALJ issued his Decision on August 25, 2011, which was adverse to Plaintiff. AR 19-40. The Appeals Council subsequently denied Plaintiff's request for relief, thus making the Decision the final decision of the Commissioner. AR 1-6. Thereafter, Plaintiff commenced the instant action in this Court seeking judicial review of the Commissioner's final decision. 42 U.S.C. §§ 405(g), 1383(c). Plaintiff requests the immediate payment of benefits for the period from June 2009 to the present, or alternatively, to remand the matter for further administrative proceedings. The parties have filed cross-motions for summary judgment in accordance with the Court's Procedural Order for Social Security Review Actions. Dkt. 18, 19, 21.

## B. FACTUAL SUMMARY

Plaintiff was born on March 22, 1961. AR 19. He completed high school, and has had a sporadic employment history working as a laborer, telephone operator and maintenance worker. AR 19, 57-59. He has no health insurance, and no income other than public assistance through food stamps. AR 59-60.

In or about 2007, Plaintiff was involved in a major motor vehicle accident and suffered multiple injuries, including a severe head injury. AR 436. His fiancée died in the accident. Id. Around the same time period, Plaintiff's close friend Leroy also died. Id. Plaintiff currently lives in an apartment in Pittsburgh, California, with his girlfriend, Alonza Glaze, whom he met at church. AR 24-25, 72. Ms. Glaze takes care of Plaintiff and the household, as he "can't do anything" due to his depression, hallucinations and other mental issues. AR 74. Plaintiff alleges that he became disabled as of November 1, 2007, as a

result of arthritis in both knees, high blood pressure, diabetes, depression and memory problems. AR 19.

Beginning late 2009, Plaintiff was treated by psychiatrist Rinata Wagle, M.D., at Contra Costa Health Services, Mental Health Division. AR 62. Dr. Wagle's mental status examinations and progress notes characterize Plaintiff as suffering from depression, auditory hallucinations (i.e., hearing Leroy's voice and having conversations with him) confusion with internal preoccupation, slow speech with latency, minimal responsiveness, dysphoric with flat affect and poor eye contact. AR 408, 411, 412, 416, 485, 492, 494, 498, 500, 506, 508. Her progress notes report "severe" functional impairment in the areas of school performance/employment, social relations and daily activities. AR 409. Dr. Wagle opined that Plaintiff's depression, hallucinations and other mental issues rendered him disabled as of November 1, 2007. AR 389.

On referral from the California Department of Developmental Services ("DDS"), Plaintiff was examined by Douglas Dolnak, D.O., and Mathilde Weems, M.D. In his mental status examination of Plaintiff, Dr. Dolnak noted that Plaintiff had reported periods of depression and anxiety since the 2007 fatal car accident. AR 335. Plaintiff continued to experience periods of crying, grief, feelings of helplessness and loneliness, and reported negative hallucinations and hearing the voices of the deceased telling him he is "no good." Id. Plaintiff reported taking Elavil, Depakote, Risperdone and Haldol (i.e., antidepressant, bipolar, antipsychotic, schizophrenia medications) for his symptoms. AR 333. Dr. Dolnak opined that while Plaintiff is able to perform simple, repetitive tasks, his depression, anxiety and social withdrawal would make it difficult for him to perform detailed and complex tasks, interact with co-workers, and perform work activities on a consistent basis without special or additional supervision. AR 336-37.

Dr. Weems, a board-certified psychiatrist, also conducted a mental status examination of Plaintiff on a consultative basis. AR 435. In her report, dated August 17, 2010, Dr. Weems described Plaintiff's difficulty sleeping and frequent conversations with his deceased friend Leroy and his fiancée, Willie, who died in the 2007 car accident.

During his examination, Plaintiff showed a childlike demeanor (exemplified by his frequent response of "I don't know"), poor concentration throughout the interview, thought-blocking and a paucity of thought content, significant auditory hallucinations, decreased mood with congruent affect, and a lack of mental orientation to date and location. AR 436-37. Dr. Weems imposed limitations including an inability to accept instructions from supervisors or interact with others due to confusion and cognitive impairments, an inability to function in the workplace, and an inability to tolerate the stress encountered in a typical workplace setting. AR 434-40, 471-73, 485-509.

### C. THE ALJ'S DECISION

On July 7, 2011, Plaintiff appeared before the ALJ for the administrative hearing on his benefits claim. At the hearing, the ALJ heard testimony from Plaintiff, his girlfriend Ms. Glaze, and a vocational expert. AR 53. On August 25, 2011, ALJ rendered his Decision. AR 19-40. Applying the requisite five-step sequential evaluation[1], the ALJ found that neither Plaintiff's physical nor his mental impairments were sufficiently severe to sustain a finding of disability. AR 22-23. Although the ALJ determined that Plaintiff had severely arthritic and damaged knees and suffered from depression and posttraumatic stress disorder, he nonetheless found Plaintiff did not have an impairment or combination thereof that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 21-22. Specifically, he ruled that Plaintiff had a physical

---

[1] Under Title II of the Social Security Act, disability insurance benefits are available when an eligible claimant is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine a claimant's eligibility, the ALJ engages in a five-step sequential evaluation process to determine whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a). To establish disability, the claimant bears the burden of showing (1) that he is not working; (2) that he has a severe physical or mental impairment; (3) that the impairment meets or equals the requirements of a listed impairment; and (4) that his residual functional capacity ("RFC") precludes him from performing his past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § § 404.1520(a)(4), 416.920(a)(4).

residual functional capacity ("RFC") to perform light work, and a mental RFC to "perform simple, routine, and repetitive tasks[,] involving simple work related decisions[,] with few if any workplace changes[,] and involving no interaction with the public." AR 23. As such, the ALJ concluded that Plaintiff was not "disabled" through the date of the hearing. AR 21.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court has authority to review a Commissioner's decision to deny disability benefits to a claimant. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). The district court's role is "to ensure that the [ALJ's] decision was supported by substantial evidence and a correct application of the law." Ludwig v. Astrue 681 F.3d 1047, 1051 (9th Cir. 2012). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). The Court must "review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "Where the evidence can reasonably support either affirming or reversing the decision, [the district court] may not substitute [its] judgment for that of the Commissioner." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

## III. DISCUSSION

### A. ISSUES

Plaintiff contends on appeal that the Commissioner's finding that his mental RFC alone does not preclude him from all work in the national economy is not supported by substantial evidence.[2] More specifically, Plaintiff contends that the ALJ improperly

---

[2] The ALJ's finding regarding Plaintiff's physical RFC is not at issue.

ignored or rejected the medical opinions of Drs. Wagle, Dolnak, Weems—all of whom treated or examined Plaintiff—and instead, credited the opinion of Dr. M. Acinas, a general practitioner who never examined or treated Plaintiff. Pl.'s Mot. at 2. In particular, the ALJ relied on Dr. Acinas' opinion to support his conclusion that Plaintiff was not credible and that he was exaggerating his mental symptoms in order to obtain benefits. AR 37-38.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, an ALJ must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal citations and quotation marks omitted). "The claimant is not required to show that her impairment 'could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Lingefelter, 504 F.3d at 1036 (internal quotations omitted). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Ostensibly in connection with the first step in assessing Plaintiff's credibility, i.e., whether there is objective medical evidence to support the claimed impairment, the ALJ asserted that "the most debilitating mental symptomatology described by the claimant is subjective in nature and cannot be objectively tested or verified, including his isolating behavior and his ongoing complaints of ongoing auditory hallucinations." AR 37. This

statement is erroneous. Generally, it is true that psychiatric impairments are not as amenable to substantiation by objective laboratory testing as are physical impairments. Hartman v. Bowen, 636 F. Supp. 129, 131-132 (N.D. Cal. 1986). "Thus, when mental illness is the basis of a disability claim, as in this case, clinical and laboratory data may consist of the diagnoses and observations of professional psychiatrists and psychologists." Id. "The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique." Christensen v. Bowen, 633 F. Supp. 1214, 1220-21 (N.D. Cal. 1986); see also Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) (noting that the Commissioner must give proper weight to the subjective elements of a physician's opinion).

In the instant case, the ALJ erred in his credibility assessment by improperly rejecting objective, probative evidence regarding Plaintiff's mental impairments by, without sufficient justification, according case-dispositive weight to the opinion of a *non*-examining, *non*-treating physician, while effectively rejecting the opinions of Plaintiff's treating and examining physicians. There are three types of physicians whose opinions may be considered in an SSI matter: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995). A treating physician's opinion is entitled to the most weight, id., since he or she "is employed to cure and has a greater opportunity to know and observe the patient as an individual," Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 831. To reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it. Id.

In his Decision, the ALJ stated: "Given the substantial credibility issues set forth in the record, in fashioning the claimant's mental residual functional capacity, *I have accorded the most probative weight to the findings of DDS examiner Dr. Acinas*. AR 37 (emphasis added). . . . [¶] I agree with Dr. Acinas that there are substantial credibility issues in this case which make it difficult to determine the claimant's actual mental residual functional capacity." AT 37-38. However, the Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. Tellingly, nowhere in its brief does the Commissioner cite Lester let alone acknowledge this controlling point of law. Moreover, the ALJ failed to provide any specific and legitimate reasons for crediting the opinion of Dr. Acinas regarding Plaintiff's credibility, over those of Plaintiff's treating and examining physicians who are mental health specialists.

Had the ALJ properly considered the opinions of Plaintiff's treating and examining physicians, it is clear that Plaintiff would have been found disabled. Dr. Wagle, a board-certified psychiatrist, began treating Plaintiff in 2009. AR 62. In her report, Dr. Wagle specifically opines that Plaintiff's depression, hallucinations and other mental issues rendered him disabled as of November 1, 2007. AR 389. Based on her clinical evaluation of Plaintiff, she found that he had "severe" functional impairments in the areas of school performance/employment, social relations and daily activities. AR 409. Dr. Wagle also noted confusion with internal preoccupation, auditory hallucinations, slow speech with latency, minimal responsiveness, poor eye contact, dysphoric with flat affect. AR 408, 411, 412, 416, 485, 485, 492, 494, 498.

The ALJ expressly rejected Dr. Wagle's finding that Plaintiff was disabled as of November 1, 2007, claiming that "he [sic] had no objective basis for reaching that conclusion" and that her report "was conclusionary, containing no objective findings." AR 33. Not so. The ALJ ignored evidence in the record, including Dr. Wagle's numerous progress notes and *her* findings therein, which support her findings regarding Plaintiff's

mental limitations.  Moreover, the ALJ offers no explanation why he failed to accord the requisite weight to the opinions of Drs. Dolnak and Dr. Weems, both of whom personally examined Plaintiff and confirmed the existence and severity of Plaintiff's mental impairments.  See Lester, 81 F.3d at 831 ("[L]ike the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.").  Given the record presented, the ALJ's reliance on the opinion of Dr. Acinas, a non-examining physician, over the opinions of Plaintiff's treating and examining physicians, constitutes reversible error.

The Commissioner glosses over the ALJ's reliance on the opinion of a non-treating, non-examining physician to assess Plaintiff's credibility, and counters that "[t]he opinions of non-examining State agency psychiatrist, H. Hurwitz, M.D., and non-examining State agency psychologist, K.P. Morris, Psy.D., support the ALJ's findings."  Cross-Mot. at 3.[3] The flaw in that argument is that ALJ did *not* premise his mental RFC finding on the opinions of either Drs. Hurwitz or Morris.  As a result, the Commissioner cannot rely on post hoc speculation or rationalizations to justify the ALJ's decision.  See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").  Indeed, it would be error for this Court to affirm the ALJ's decision based on such evidence.  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").

---

[3] The Commissioner claims that although the ALJ specifically cites to Dr. Acinas' opinions in his Decision, the ALJ actually is referring to the opinions of K.P. Morris, Pys. D., whose name appears in Dr. Acinas' report. Def.'s Cross-Mot. at 8 n.7 (citing AR 431-433).  The remark in Dr. Acinas' report appears to be attributable to "K.P. Morris," though the record is far from clear in that respect.  In any event, to the extent the Commissioner is correct, that actually further undermines the ALJ's decision, as he would have relied on the opinion of non-physician who never examined Plaintiff over those physicians who actually treated and examined him.

Aside from ignoring the opinions and findings of Plaintiff's treating and examining physicians, the ALJ erred in his assessment of Plaintiff's testimony. In his Decision, the ALJ cited Plaintiff's purported "inconsistent statements and exaggerations" as a basis for finding that his claim involved "symptomology in excess of what would be reasonably expected." AR 35. For example, the ALJ noted that although there was some evidence that Plaintiff sought mental health treatment after the fatal car accident in 2007, he did not seek treatment from Contra Costa Health Services until after the DDS referred Plaintiff for a psychiatric evaluation in connection with his benefits claim. AR 36. However, the Ninth Circuit has counseled against questioning a claimant's credibility based upon the timing and source of a medical referral. See Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (finding that in view of the nature of mental illness, a delay in seeking mental health treatment and the fact that the examination was at the request of his attorney should not inure to the detriment of the claimant).

The ALJ also discounted Plaintiff's credibility based on his exhibiting "no abnormal mental symptomology" or "instability" during his physical examinations. AR 36. In other words, the ALJ believed that if Plaintiff were as mentally impaired as alleged, his other (non-mental health) physicians would have noted as such in their records. As an example, the ALJ cited Plaintiff's visit with Dr. Nguyen, who noted that "the claimant's mood and affect were normal." AR 36, 328. However, Dr. Nguyen examined Plaintiff upon referral from the DSS for a "comprehensive orthopedic evaluation," not a mental health evaluation. AR 326. That Plaintiff's mood and affect may have appeared normal for purposes of a physical evaluation does not ipso facto mean that a different presentation in the context of a mental examination or evaluation shows that he is fabricating or exaggerating his impairments. In any event, the isolated comment of a single provider who was focused on examining a *physical* injury can hardly be considered substantial evidence of Plaintiff's lack of credibility.

Finally, the ALJ construed Plaintiff's allegedly "frequent, repetitive and consistent response of 'I don't know'" as evidence that he is not "as impaired as he seems to be." AR

36-37. However, the record shows that Plaintiff answered "I don't know" only five times in response to the approximately seventy questions posed by the ALJ.[4] AR 59, 63, 65-67. In addition, Plaintiff's medical record shows that Plaintiff often responded "I don't know" to questions posed by his physicians. But rather than interpreting such responses as evidence of Plaintiff's evasiveness or lack of credibility, the physicians viewed them as being indicative of his mental limitations. Dr. Weems, for instance, described Plaintiff as "childlike," often responding "I don't know" in response to her questions. AR 436. She also seemed to connect such responses to Plaintiff having suffered multiple injuries, including a severe head injury, as a result of the car accident in 2007. Id. Similarly, other medical providers consistently noted Plaintiff's response of "I don't know" evinced he was disoriented, a "poor historian" and "minimally responsive." AR 406-408. Rather than construing Plaintiff's few "I don't know" responses as indicative of lack of credibility, the ALJ should have considered such responses in the context of the medical records presented, which he failed to do. In view of the record presented, the Court cannot conclude that substantial evidence supports the ALJ's assessment of Plaintiff's credibility.

### B.  REMEDY

The decision whether to remand for further proceedings under sentence four of 42 U.S.C. § 405(g) or simply to award benefits is within the discretion of the district court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) ("Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to tremendous

---

[4] These questions pertained to the last job he worked, whether he saw a therapist prior to Dr. Wagle, the substances he used over two years prior to the hearing, and whether his mental problems are always like those he exhibited during the hearing. AR 59, 63, 65-67.

financial difficulties while awaiting the outcome of their appeals and proceedings on remand.") (internal quotations and citation omitted).

Where the ALJ fails to provide an adequate reason for discrediting the symptom testimony of the claimant or rejecting the opinion of an examining physician, that testimony or opinion is credited as a matter of law. Lester, 81 F.3d at 834 (citing Varney v. Sec. of HHS, 859 F.2d 1396, 1401 (9th Cir. 1988)). "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Benecke, 379 F.3d at 593.

As discussed above, the ALJ did not provide legally sufficient reasons for rejecting, either tacitly or expressly, the opinions of Plaintiff's treating and examining physicians, and correspondingly crediting the opinion of a non-examining and non-treating physician. Moreover, it is clear from the record that had he properly credited their opinions, a finding of disability based on Plaintiff's mental impairments would have followed. Since neither party has identified any outstanding issues to be determined, coupled with Plaintiff's unrefuted assertion that further delay would inure to his detriment, the Court, in its discretion, remands this matter to the Commissioner for the immediate payment of benefits. E.g., Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986) ("Where, as here, the record has been thoroughly developed, it is within [the court's] discretion to award benefits without remanding the case for additional evidence.").

## IV. CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT Plaintiff's motion for summary judgment is GRANTED and Defendant's cross-motion for summary judgment is DENIED. The Commissioner's Decision is REVERSED and this matter is REMANDED for the immediate payment of benefits consistent with this Order. The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated: 3/31/14

SAUNDRA BROWN ARMSTRONG
United States District Judge